## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: RICHARD SHARIF, <br><br> Debtor. | Case No. 18-cv-8508 <br><br> Judge Martha M. Pacold |
| HAIFA SHARIFEH, <br><br> Intervenor-Appellant, <br><br> v. <br><br> HORACE FOX, JR., in his capacity as the Chapter 7 Trustee of Debtor's Estate, <br><br> Appellee. | On appeal from the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division <br><br> Bankr. Case No. 09-bk-05868 <br><br> Judge Jacqueline P. Cox |

### MEMORANDUM OPINION AND ORDER

Intervenor Haifa Sharifeh (also known as Haifa Kaj), purporting to act as executrix of the estate of Soad Wattar, filed this appeal from the bankruptcy court's order denying her motion to vacate the bankruptcy court's earlier order directing the turnover of assets held by Wattar's trust to the bankruptcy estate. In an earlier appeal from the same order denying Haifa's motion to vacate, the prior district court judge assigned to this case remanded for the bankruptcy court to address certain issues. On remand, the bankruptcy court held evidentiary hearings addressing those matters and issued an order with factual findings that supported the court's earlier denial of Haifa's motion to vacate. Haifa now appeals. For the reasons below, the bankruptcy court's order is affirmed.

### BACKGROUND

This appeal has a long and complicated history. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015); *Wellness Int'l Network, Ltd. v. Sharif*, 617 F. App'x 589 (7th Cir. 2015); *Sharifeh v. Fox (In re Sharif)*, No. 09-BK-5868, 2016 WL 5373199 (N.D. Ill. Sept. 26, 2016)*, vacated in part*, 2017 WL 4310538 (N.D. Ill. Sept. 28, 2017); *Sharifeh v. Fox*, No. 11 C 8811, 2012 WL 469980 (N.D. Ill. Feb. 10, 2012). The court assumes familiarity with these prior opinions and limits recitation of the facts to only those essential to resolving the issues addressed in this appeal.

Soad Wattar had multiple children. Three of her children, Richard Sharif, Haifa, and Ragda Sharifeh are involved in this appeal. *Sharifeh v. Fox (In re Sharif)*, No. 15-cv-10694, 2017 WL 4310538, at *1 (N.D. Ill. 2017). In 1992, Wattar established a revocable trust (the "Wattar Trust"). *Id.* Wattar passed away in March 2010. *Id.* at *2.

The debtor, Richard Sharif, filed for bankruptcy in 2009, opening Case No. 09-BK-05868. *Id.* Wellness International Network, Ltd. ("WIN") had a judgment against Richard from another lawsuit and opened an adversary proceeding in the bankruptcy court. *Id.*

WIN filed a motion for sanctions against Richard based upon his failure to comply with WIN's discovery requests in the adversary proceeding, which the bankruptcy court granted on July 6, 2010 (the "Alter Ego Order"). *Id.* The Alter Ego Order granted default judgment against Richard in favor of WIN, as well as a declaratory judgment that the Wattar Trust was Richard's alter ego "because he treats its assets as his own property and it would be unjust to allow [Richard] to maintain that the [Wattar Trust] is a separate entity." [Bankr. 53] at 18.[1]

On July 30, 2010, the bankruptcy trustee ("Trustee") filed a motion for turnover to the bankruptcy estate of certain of the Wattar Trust's assets, including life insurance proceeds held by Hartford Financial Services Group and assets with Wells Fargo Advisors Financial Network, LLC. *Id.* at *3. On August 5, 2010, the bankruptcy court granted the motion and issued a corresponding order directing the turnover of the Wattar Trust's assets (the "Turnover Order"). *Id.*

After Richard's appeals to the Seventh Circuit and Supreme Court regarding the Alter Ego Order ended, on September 12, 2015, Haifa, purporting to act as executrix of Wattar's estate (the "Estate"), moved to vacate the Turnover Order under Federal Rule of Civil Procedure 60(b)(4). *Id.* at *4. Haifa asserted that the Turnover Order should be vacated because she (and therefore the Estate) were never served with notice of the bankruptcy proceeding, so the bankruptcy court lacked personal jurisdiction over the Estate and the Turnover Order was void for violating due process. *Id.* The Trustee opposed the motion, arguing that, based upon Wattar's April 26, 2007 will, all of Wattar's assets had been left to Richard as the trustee of the Wattar Trust. *Id.* Thus, the Estate (and Haifa as executrix) had no interest in any of the assets at issue in the Turnover Order and were not entitled to notice. *Id.* In her reply, Haifa attached a document purporting to be Wattar's April 28, 2007 will (the "Second Will") that named Haifa as the executrix of

---

[1] Bracketed numbers preceded by "Bankr." refer to docket entries in the bankruptcy proceeding, Case No. 09-BK-05868, and are followed by page and / or paragraph numbers. Bracketed numbers without "Bankr." refer to docket entries in this appeal. All page numbers refer to the CM/ECF page number.

Wattar's estate. *Id.* Haifa did not explain the Second Will's significance in her reply brief. *Id.*

The bankruptcy court denied the motion to vacate, concluding that Haifa had not provided any evidence or information that the assets at issue in the Turnover Order "belonged to a person or entity not then before the Court" at the time the Turnover Order was entered. *Id.*

Haifa appealed and the prior district court judge assigned to this case affirmed the bankruptcy court's order denying the motion to vacate. *Id.* at *5. Haifa moved for reconsideration. *Id.*

The prior judge granted the motion for reconsideration and remanded the case to the bankruptcy court for further proceedings. The prior judge directed the bankruptcy court to address "(1) whether [Haifa] waived her right to rely on the [Second] Will (by failing to attach it to her Rule 60(b)(4) motion or to comply with applicable evidentiary rules, or for any other reason), and (2) if there is no waiver, which version of the will is the controlling one." *Id.* at *6. The prior judge also held that the bankruptcy court was "free to invite additional briefing and hearing on any other relevant issues that it previously identified but did not decide—such as laches and issue preclusion—and to resolve [Haifa's] motion on any of those grounds as the Court sees fit." *Id.* The prior judge further observed that the bankruptcy court was "free to explore further whether [Haifa] had actual notice of [Richard's] bankruptcy and the turnover order and to make additional findings in that regard. The Bankruptcy Court may decide that [Haifa] has waived this issue or consider it on its merits and make factual findings." *Id.* (footnote omitted). Finally, the prior judge requested the bankruptcy court address a 2007 document purporting to revoke Richard's designation as the trustee for the Wattar Trust. *Id.* at *7.

On remand, the bankruptcy court held evidentiary hearings to address the issues identified by the district court. The bankruptcy court ultimately entered an amended order holding, among other things, that Haifa waived her right to rely on the Second Will, her claims against the Trustee were barred by laches and res judicata, she had actual notice of the bankruptcy proceeding before the entry of the Turnover Order, and the Second Will was a forgery. [Bankr. 566]; [Bankr. 566-1]; [Bankr. 566-2]; [Bankr. 566-3]; [Bankr. 566-4]; [Bankr. 566-5].

Haifa filed this appeal.

## LEGAL STANDARDS

This court sits as an appellate court when hearing appeals from bankruptcy courts. *Dvorkin Holdings, LLC*, 547 B.R. 880, 886 (N.D. Ill. 2016). "The Bankruptcy Court's factual findings are scrutinized for clear error, while its legal conclusions are reviewed *de novo.*" *Id.* "If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, the reviewing court

will not reverse its factual findings even if the Court would have weighed the evidence differently." *Duggisetty v. Laying*, No. 20 C 2026, 2020 WL 6132233, at *3 (N.D. Ill. Oct. 19, 2020). "A factual finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted).

## DISCUSSION

## I.    Violation Of Bankruptcy Rule 8014

Haifa's briefing does not comply with Federal Rule of Bankruptcy Procedure 8014. Bankruptcy Rule 8014(a) requires an appellant's opening brief to include, among other things: a table of contents, a table of authorities, a jurisdictional statement, "a statement of the issues presented and, for each one, a concise statement of the applicable standard of appellate review," a concise statement of the case setting out the relevant facts and procedural history, and a summary of argument. Haifa's brief contains none of these items.

"Bankruptcy Rule 8014 is not only a technical or aesthetic provision, but also has a substantive function—that of providing the other parties and the court with some indication of which flaws in the appealed order or decision motivate the appeal." *Town of Hingham v. Sirikanjanachai (In re Sirikanjanachai)*, BAP No .18-059, 2019 WL 6605858, at *3 (B.A.P. 1st Cir. Dec. 4, 2019) (internal quotation marks omitted). "Appellate rules governing the form of briefs do not exist merely to serve the whimsy of appellate judges. Some of the requirements . . . are essential for the proper disposition of an appeal." *Id.* (internal quotation marks omitted) (ellipsis in original).

Here, the bankruptcy court's order is lengthy, addresses a significant number of issues, and analyzes days of witness testimony. The accompanying record is voluminous, and the procedural history spans a decade with numerous appeals and related proceedings. To say the least, Haifa's failure to comply with Bankruptcy Rule 8014 greatly increases the difficulty of discerning the relevant materials and resolving her appeal.

"A court is not required to overlook the procedural and substantive omissions in a party's briefing and to stitch together a cogent argument or to guess what part of the record might be relevant." *Id.* Many arguments and assertions made throughout Haifa's briefs lack any citation to the record or supporting legal authority. Challenges to the bankruptcy court's order that "are wholly unsupported by developed argument citing the record and supporting authority" are forfeited. *Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 538 (7th Cir. 2017). Nevertheless, the court will still address the merits of Haifa's arguments even though many of her arguments are waived. *See Pesmen v. Bannockburn Lake Office*

*Plaza Assocs. Ltd.*, No. 98 C 5437, 1999 WL 356307, at *3 (N.D. Ill. May 24, 1999) ("Although Pesmen's briefing errors are significant enough to doom his appeal, the Court moves forward for the sake of completeness.").

## II.  Collateral Estoppel

The Trustee contends that the bankruptcy court's order should be affirmed on the alternative ground that Haifa's motion to vacate was barred by collateral estoppel (also known as issue preclusion) because a court has already determined that the Estate has no interest in the assets subject to the Turnover Order, meaning Haifa was not entitled to notice of the Turnover Order.

In 2016, Haifa, purporting to act as executrix for the Estate, and Ragda filed suit against Hartford and Wells Fargo alleging breach of contract, breach of fiduciary duty, and negligence based upon Hartford and Wells Fargo's compliance with the Turnover Order and transfer of Wattar's life insurance proceeds and the Wattar Trust's assets to the bankruptcy estate. *Estate of Soad Wattar v. Hartford Life & Annuity Ins. Co.*, No. 16-cv-04397, ECF 1 (Apr. 18, 2016). Haifa claimed that the Estate had an interest in these assets and alleged, for example, that "Wells Fargo had been holding assets belonging to the entity, Soad Wattar Revocable Living Trust" that, after Soad Wattar passed away, "belonged to the . . . the Estate." *Id.* ¶ 4; *see also id.* ¶¶ 15–16.

Hartford and Wells Fargo moved to dismiss. Wells Fargo argued, among other things, that the Estate lacked standing because the assets held by Wells Fargo were owned by the Wattar Trust and not the Estate. *Estate of Soad Wattar v. Hartford Life & Annuity Ins. Co.*, No. 16-cv-04397, ECF 28 at 9 (N.D. Ill. June 24, 2016). Specifically, Wells Fargo argued that "because the assets were owned by the [Wattar] Trust and did not become property of [the Estate] even after her passing, [the Estate] ha[d] no property interest in the affected assets and thus suffered no injury in fact when the [Wattar] Trust's assets were turned over to the bankruptcy trustee." *Id.* at 10–11. Hartford also argued that the Estate had no interest in the life insurance policy proceeds and therefore lacked standing as to its claims against Hartford. *Estate of Soad Wattar v. Hartford Life & Annuity Ins. Co.*, No. 16-04397, ECF 25 at 29 (N.D. Ill. June 24, 2016).

The district court granted the motions. Reviewing the life insurance policy, the court held that "[t]he [E]state holds no interest in the insurance proceeds" and therefore could not show that it was "injured by Hartford's conduct." *Estate of Soad Wattar v. Hartford Life & Annuity Ins. Co.*, No. 16-04397, ECF 46 at 6 (Feb. 10, 2017). The court further held that the Estate "fail[ed] to plausibly allege that [it] held an interest in the assets transferred by Wells Fargo." *Id.* at 7. Accordingly, the court concluded that "[w]ithout an interest in the assets transferred by Hartford or Wells Fargo, plaintiffs could not have been injured by those transfers" and lacked standing. *Id.* The court also determined that Ragda and Haifa could not amend the

5

complaint to cure these defects and therefore dismissed the complaint without prejudice and entered final judgment. *Id.* at 11–12; *Estate of Soad Wattar v. Hartford Life & Annuity Ins. Co.*, No. 16-04397, ECF 47 (Feb. 10, 2017).

"[B]ecause the decision sought to be given preclusive effect was rendered by a federal court, federal preclusion law applies." *U.S. ex rel. Conner v. Mahajan*, 877 F.3d 264, 270 (7th Cir. 2017). Collateral estoppel applies if "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action." *Dexia Credit Local v. Rogan*, 629 F.3d 612, 628 (7th Cir. 2010).

Haifa disputes only the second element. Haifa argues that "the issue was not actually litigated . . . because [the court] dismissed the claim without prejudice" and "not on the merits." [80] at 6. But collateral estoppel applies even if a claim is dismissed without prejudice based on a jurisdictional defect—a claim need not be litigated "on the merits." *Robinson v. Sherrod*, 631 F.3d 839, 843 (7th Cir. 2011) (observing that "[c]ollateral estoppel (issue preclusion) will bar relitigation of the grounds on which the present suit was dismissed" even though the plaintiff's suit was dismissed "without prejudice" and there was "no ruling on the merits of his claim"); *Carr v. Tillery*, 591 F.3d 909, 917 (7th Cir. 2010) ("[A] dismissal can be without prejudice yet have preclusive effect."); *Perry v. Sheahan*, 222 F.3d 309, 318 (7th Cir. 2000) ("Although only judgments on the merits preclude parties from litigating the same cause of action in a subsequent suit, that does not mean that dismissals for lack of jurisdiction have no preclusive effect at all. A dismissal for lack of jurisdiction precludes relitigation of the issue actually decided, namely the jurisdictional issue.").

Haifa also contends that the district court's decision is incorrect because the court did not have all the facts before it, as Haifa asserts that she did not have the Second Will during the litigation against Hartford and Wells Fargo. [80] at 5–6. As a factual matter, Haifa's assertion that she could not submit the Second Will is false. Haifa attached the Second Will to her reply in support of her motion to vacate the Turnover Order filed in November 2015, [Bankr. 228-1] at 50–56, that was filed months before Haifa and Ragda filed suit against Hartford and Wells Fargo in April 2016. Regardless, the correctness of the earlier decision is not a factor in determining whether collateral estoppel applies. *Gulf Power Co. v. FCC*, 669 F.3d 320, 324 (D.C. Cir. 2012) ("[I]f an issue can be turned into a new issue merely by asking whether it had been rightly decided, collateral estoppel would never apply."); *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 576 (3d Cir. 2002) ("Error in a prior judgment is not a sufficient ground for refusing to give it preclusive effect."). Haifa cites no authority that holds otherwise.

Haifa also appears to argue that applying collateral estoppel here would be unfair, but she does not explain how. And the authorities she cites in support apply

Illinois, not federal, preclusion law. *See Goodwin v. Bd. of Trs. of Ill.*, 442 F.3d 611, 620–21 (7th Cir. 2006); *Herzog v. Lexington Twp.*, 167 Ill. 2d 288 (1995).

Finally, Haifa contends that this issue was not raised in the bankruptcy court. This issue, however, was directly raised by the Trustee on remand. [Bankr. 448] at 2–3. Although the bankruptcy court did not decide this issue, this court may affirm the bankruptcy court's order "on any ground supported by the record." *Peterson v. Anyone Home, Inc. (In re Mack Indus., Ltd.)*, No. 21 CV 1457, 2021 WL 4815270, at *3 (N.D. Ill. Aug. 2, 2021); *Murphy v. Slack*, No. 06 C 2091, 2006 WL 2583726, at *2 (N.D. Ill. Sept. 5, 2006); *see also Marx v. M & I Bank of Watertown*, 17 F.3d 1012, 1014 n.3 (7th Cir. 1994) ("It is well settled that we may affirm the district court on any ground that finds support in the record." (internal quotation marks omitted)).

Accordingly, the bankruptcy court's denial of Haifa's motion to vacate is affirmed because the motion is barred by collateral estoppel.

## III.  Personal Jurisdiction And Actual Notice

The bankruptcy court concluded that the Turnover Order did not violate due process because Haifa (and therefore the Estate) had actual notice of the bankruptcy proceeding, including the Alter Ego Order and the Turnover Order. [Bankr. 566-4] at 8–10. "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Actual notice of a bankruptcy proceeding can satisfy due process. *Id.*; *In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990) ("Due process does not always require formal, written notice of court proceedings; informal actual notice will suffice."). To determine whether notice is sufficient, the court must examine "the totality of the circumstances" to ensure that the notice provided the interested party with adequate opportunity to present objections. *In re Hardej*, 563 B.R. 855, 864 (N.D. Ill. 2017); *In re Marino*, 195 B.R. 886, 895 (N.D. Ill. 1996).

Haifa has not shown that the bankruptcy court erred when it determined that Haifa had actual notice. Although Haifa stated during the evidentiary hearings before the bankruptcy court that she was not aware of the Alter Ego Order until 2011, she also testified that she had a discussion with her family about the Order shortly after it was entered in July 2010. [Bankr. 552] at 352–54. Indeed, on July 15, 2010, Haifa and Ragda filed a lawsuit in the Circuit Court of Cook County against Richard that discussed both the WIN adversary proceeding as well as the Alter Ego Order. [14-19] at 14–15; *see also* [14-10] at 5–6 (amended complaint filed on July 30, 2010, discussing the same). Addressing that lawsuit, Richard testified that he was cooperating with his "sisters" (*i.e.*, both Ragda and Haifa) because he had "an interest for them to succeed to get their trust back." [Bankr. 553] at 625.

Separately, Ragda filed multiple pleadings acknowledging that she filed the Circuit Court of Cook County lawsuit with Haifa.  [Bankr. 65] ¶¶ 18, 22 ("Ragda Sharifeh and Haifa Kaj . . . caused a complaint to be filed in the Circuit Court of Cook County."); [Bankr. 68] ¶¶ 13, 17 (similar); [14-31] ¶¶ 19, 23 (similar).  Based upon this evidence, Haifa was aware of the bankruptcy proceeding, including the Alter Ego Order holding that Richard was the alter ego of the Wattar Trust, weeks before the Turnover Order was entered on August 5, 2010.

Haifa does not dispute that, accepting these facts, she had notice adequate to satisfy due process.  Instead, she challenges the facts and contends that she had no notice of the bankruptcy proceedings before the Turnover Order was entered.  Among other evidence, Haifa points to her testimony that she did not learn about the bankruptcy proceedings until 2011 and was not involved in the litigation against Richard, as well as the testimony from a variety of witnesses about Haifa's poor relationship with her siblings around 2009 and 2010.  Ragda also testified that Haifa was not part of the litigation against Richard.

The bankruptcy court, however, ultimately found that neither Haifa nor Ragda was credible.  [Bankr. 566-1] at 5, 8; [Bankr. 566-2] at 4, 9; *see also* [566-3] at 8 (observing that Richard "has little credibility").  Appellate courts "are especially deferential toward [the] trial court's assessment of witness credibility." *Dimas v. Stergiadis (In re Dimas)*, 14 F.4th 634, 642 (7th Cir. 2021) (internal quotation marks omitted) (alteration in original).  The court discerns no basis to upset the bankruptcy court's credibility findings.

Ultimately, "it is for the bankruptcy court to assess the credibility of witnesses and weigh evidence, and [the district court] will not second guess the [bankruptcy] court's resolution of conflicting evidence." *Freeland v. Enodis Corp.*, 540 F.3d 721, 734 (7th Cir. 2008).  Haifa has not shown any basis to disturb the bankruptcy court's determination that Haifa had actual notice that satisfied due process.

## IV.   Waiver Regarding The Second Will

The bankruptcy court also held that Haifa waived her ability to rely upon the Second Will by failing to present it with her motion to vacate and instead waiting to submit it with her reply.  [Bankr. 566] at 5; [Bankr. 566-3] at 10; [Bankr. 566-5] at 4.  Again, the court finds no basis to overturn the bankruptcy court's holding.

Courts have discretion over whether to consider new evidence submitted for the first time in reply.  *See Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990) ("In view of its tardy submission, it is for the district court to decide whether or not to consider Slife's affidavit.").  Courts regularly exercise that discretion and refuse to consider such untimely evidence.  *See, e.g.*, *Meek v. Archibald & Meek, Inc.*, No. 21-cv-02397, 2021 WL 2036535, at *3 (N.D. Ill. May 21, 2021) ("It is well-

established that a reply brief should not present new arguments or incorporate new evidence for arguments that were not properly supported in an opening brief."); *cf. Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000) ("Because Mason does not dispute this conclusion until his reply brief, this new argument is waived.").

Here, it is undisputed that Haifa did not submit the Second Will until her reply brief in support of her motion to vacate. [Bankr. 228-1] at 35–41. Even then, she did not explain the Second Will's significance. *See* [Bankr. 228]. Thus, it was up to the discretion of the bankruptcy court whether to consider the Second Will. The bankruptcy court declined to do so, and the court discerns no basis on which to reverse that decision.

Haifa argues that she had no obligation to present the Second Will with her motion. But, as the movant, Haifa had the burden of proof to show that the Turnover Order should be vacated. *See Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 861 (7th Cir. 2016). The premise of Haifa's motion was that Haifa, as executrix for the Estate, had not been served with process before the Turnover Order was entered and that the bankruptcy court therefore lacked personal jurisdiction over the Estate and could not order the turnover of the Estate's assets. *See* [Bankr. 194]. Haifa was therefore obligated to present evidence that she was in fact the Estate's trustee, executrix, or otherwise had any claim to represent the Estate.[2] Indeed, the bankruptcy court originally denied Haifa's motion because Haifa had not shown what her relationship was with the Estate or why she was entitled to notice of the Turnover Order. [Bankr. 232] at 4–6. Haifa contends that "there is a presumption made when a company or person first appears in an action that they are who they say they are" but cites no authority in support—waiving the argument. [74] at 5; *see Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Haifa also ignores that she, as the movant, bore the burden of establishing her entitlement to relief. Here, that meant putting forth evidence that she had an interest in the assets at issue in the Turnover Order. For this same reason—that Haifa as the movant had the burden— her argument that establishing her relationship with the Estate was an "affirmative defense," [74] at 5, is unpersuasive.

Haifa also argues that whether she waived reliance on the Second Will was, in turn, waived by the Trustee because the Trustee did not raise the issue in his response to Haifa's motion to vacate. This is a nonsequitur. First, the bankruptcy court had discretion whether to receive untimely evidence, regardless of whether the Trustee objected. Second, the Trustee could not be expected to object in his

---

[2] Haifa, in fact, did not even explain her relationship to the Estate in her reply brief that attached the Second Will. [Bankr. 228].

response brief to consideration of the Second Will that was not submitted until after the Trustee's response.

Without the Second Will, Haifa had no evidence that she was the executrix of the Estate and, in turn, no evidence that she had an interest in any of the assets at issue in the Turnover Order. Thus, Haifa has not shown that she was entitled to notice, as the bankruptcy court concluded when the court denied her motion to vacate.

## V.      Other Issues

The bankruptcy court's order addressed numerous other issues that supported denial of Haifa's motion to vacate. The court concluded that Haifa had notice through her agents Richard and Richard's attorney (who the bankruptcy court concluded were acting on the Estate's behalf), Haifa waived personal jurisdiction objections by participating in the bankruptcy proceeding through both Richard and his attorney, and the appeal of the Alter Ego order therefore also bound Haifa and the Estate through res judicata. The court further concluded that Haifa's motion was barred by laches and the Second Will was a forgery. The Trustee also argues for affirmance on the alternative ground that Haifa and the Estate have no interest in the Wattar Trust. The bankruptcy court also determined that the November 1, 2007 Revocation of Trustee was invalid.

The court does not reach these issues because, as explained above, there are already multiple grounds that independently support affirmance of the bankruptcy court's denial of Haifa's motion to vacate. Because resolution of these issues does not alter the ultimate disposition of this appeal, the court does not address them.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's order is affirmed. Enter final judgment.

Dated: September 14, 2022                              /s/ Martha M. Pacold